Appeal from an order of the Supreme Court, Monroe County *1314 (Matthew A. Rosenbaum, J.), entered December 15, 2011. The order, insofar as appealed from, granted the motion of defendant Gerald Breen to compel plaintiff to produce certain medical reports, under penalty of preclusion, and denied the cross motion of plaintiff for a protective order.
It is hereby ordered that the order so appealed from is affirmed without costs.
Memorandum: Plaintiff commenced this action seeking damages for injuries he allegedly sustained as a result of his exposure to lead-based paint while residing in a number of apartments rented to his mother from 1992 through 1996, including apartments owned by A. Gi Yi and Gerald Breen (defendants). As amplified by his bills of particulars, plaintiff alleged that he suffered 35 injuries as a result of his lead exposure, including neurological damage, diminished cognitive function and intelligence, behavioral problems, developmental deficiencies, increased probability of emotional and psychological impairments, hyperactivity, irritability, memory deficits, decreased educational and employment opportunities, and speech and language delays.
Pursuant to CPLR 3121 and Uniform Rules for Trial Courts (22 NYCRR) § 202.17, Breen served notices fixing the time and place of two medical examinations (hereafter, examinations) and requested “copies of any reports of any physicians who have treated or examined the plaintiff’ in advance of the examinations (see 22 NYCRR 202.17 [b] [1]). In response, plaintiff provided Breen with educational records and medical records of his treating physicians. None of those records, however, linked the particular conditions, symptoms, or problems that plaintiff was experiencing with his exposure to lead (see Nero v Kendrick, 100 AD3d 1383, 1383 [2012]).
Breen postponed the examinations and moved to compel plaintiff to produce “medical reports of treating or examining medical service providers detailing a diagnosis of all injuries alleged to have been sustained by plaintiff as a result of exposure to lead-based paint” or, in the alternative, to “preclud[e] the plaintiff[ ] from introducing proof concerning said injuries.” Breen asserted that, without such information, he would be “forced to determine the nature and extent of the [examinations] to be performed without any evidence that the alleged injuries sustained by plaintiff: (1) exist, and (2) are causally related to ingestion and/or inhalation of lead-based paint as alleged in [the] [c]omplaint.” A. Gi Yi joined in Breen’s motion to compel.
Plaintiff opposed the motion and cross-moved for, inter alia, a *1315 protective order pursuant to CPLR 3103. Plaintiff contended that his bills of particulars provided defendants with sufficient notice of his alleged injuries. With respect to causation, plaintiffs attorney asserted that plaintiff “suffered [lead] neurotoxicity at . . . blood lead levels known to cause severe brain and nerve damage during his residence at the defendants’ respective properties,” and cited various government reports and studies detailing the potential effects of lead poisoning in young children. Plaintiff further contended that defendants were in effect seeking an expert report pursuant to CPLR 3101 (d) as opposed to the report of a medical provider pursuant to 22 NYCRR 202.17, and were improperly requesting that plaintiff “prematurely go through the expense of retaining an expert.”
Plaintiff appeals from an order that granted the motion “in all respects,” denied the cross motion, and directed plaintiff to produce “a medical report or reports of any treating or examining medical service provider detailing a diagnosis of any injuries alleged to have been sustained by the plaintiff . . . and causally relating said injuries to plaintiff’s alleged exposure to lead-based paint . . . before any [examinations] are conducted.” The order further provided that, “in the event the plaintiff fails to produce the aforementioned report or reports, [he] shall be precluded from introducing any proof concerning injuries alleged to have been sustained by the plaintiff.” We affirm.
It is well settled that “[a] trial court has broad discretion in supervising the discovery process, and its determinations will not be disturbed absent an abuse of that discretion” (Finnegan v Peter, Sr & Mary L. Liberatore Family Ltd. Partnership, 90 AD3d 1676, 1677 [2011]; see Hann v Black, 96 AD3d 1503, 1504 [2012]; WILJEFF, LLC v United Realty Mgt. Corp., 82 AD3d 1616, 1619 [2011]). New York has long adhered to a policy of liberal, open pretrial disclosure (see Kavanagh v Ogden Allied Maintenance Corp., 92 NY2d 952, 954 [1998]; DiMichel v South Buffalo Ry. Co., 80 NY2d 184, 193 [1992]). CPLR 3101 (a), which governs discoverability, broadly provides that “[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action” (see Hoenig v Westphal, 52 NY2d 605, 608 [1981]; Patrick M. Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3101:4). That provision “has been liberally construed to require disclosure where the matter sought will ‘assist preparation for trial by sharpening the issues and reducing delay and prolixity’ ” (Hoenig, 52 NY2d at 608, quoting Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]). “Thus, restricted only by a test for materiality ‘of usefulness and reason’ . . . , pretrial discovery is to be encouraged” (id., quoting Allen, 21 NY2d at 406).
*1316 With respect to specific disclosure devices, CPLR 3121 (a) provides for a physical or mental examination of any party when that party’s physical or mental condition is “in controversy” (see Hoenig, 52 NY2d at 609; Patrick M. Connors, Practice Commentaries, CPLR 3121:1). CPLR 3121 (b) provides for the exchange of certain medical reports (see Hoenig, 52 NY2d at 609), and Uniform Rule § 202.17 “elaborates on the exchange of medical reports in tort actions, supplying more detail than CPLR 3121 (b)” (Patrick M. Connors, Practice Commentaries, CPLR 3121:8 at 313). Uniform Rules for Trial Courts (22 NYCRR) § 202.17 provides in relevant part that, “[ejxcept where the court otherwise directs, in all actions in which recovery is sought for personal injuries, disability or death, physical examinations and the exchange of medical information shall be governed by the provisions hereinafter set forth: (a) At any time after joinder of issue and service of a bill of particulars, the party to be examined or any other party may serve on all other parties a notice fixing the time and place of examination . . . (b) At least 20 days before the date of such examination, or on such other date as the court may direct, the party to be examined shall serve upon and deliver to all other parties the following, which may be used by the examining medical provider: (1) copies of the medical reports of those medical providers who have previously treated or examined the party seeking recovery. These shall include a recital of the injuries and conditions as to which testimony will be offered at the trial, referring to and identifying those x-ray and technicians’ reports which will be offered at the trial, including a description of the injuries, a diagnosis and a prognosis” (emphasis added).
CPLR 3103 (a) vests a trial court with the discretion to “make a protective order denying, limiting, conditioning or regulating the use of any disclosure device,” either “on its own initiative, or on motion of any party or of any person from whom discovery is sought.” Such an order “shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts” (id.).
Under the unique circumstances of this case, we conclude that Supreme Court did not abuse its broad discretion in directing plaintiff to produce a medical report containing a diagnosis of the alleged injuries sustained by plaintiff and causally relating such injuries to lead exposure before any CPLR 3121 examinations are conducted. As previously noted, plaintiff alleges numerous and wide-ranging neurological, physiological, psychological, educational, and occupational effects of his childhood exposure to lead. Although plaintiff disclosed his medical *1317 and educational records, none of those records diagnoses plaintiff with a lead-related injury or causally relates any of plaintiffs alleged physical or mental conditions to lead exposure. Indeed, plaintiffs mother testified at her deposition that no health care provider had ever told her that plaintiff had “any residual injuries from lead exposure.” The only reference in the disclosed records to an injury that may have been caused by exposure to lead is a school district health and development assessment, which states that “[ejlevated [blood] lead level may have had an effect” on plaintiffs educational performance.
Although the dissent is correct that CPLR 3121 and 22 NYCRR 202.17 do not require the disclosure directed in this case, they likewise do not preclude a trial judge from proceeding in the manner at issue herein. As the Court of Appeals has noted, “CPLR 3121 does not limit the scope of general discovery available, subject to the discretion of the trial court, under CPLR 3101” CKavanagh, 92 NY2d at 953-954). Rather, CPLR 3121 “broadens rather than restricts discovery” (Hoenig, 52 NY2d at 609). With respect to Uniform Rules for Trial Courts (22 NYCRR) § 202.17, that rule is prefaced by the phrase “[e]xcept where the court otherwise directs,” thus preserving the trial judge’s discretion to manage the discovery process (see generally CPLR 3101 [a]; 3103 [a]).
Contrary to the view of the dissent, our affirmance of the trial court’s order does not impose “unduly burdensome obligations not contemplated by 22 NYCRR 202.17” upon all personal injury plaintiffs. Rather, we simply conclude that where, as here, the records produced by a plaintiff pursuant to Uniform Rules for Trial Courts (22 NYCRR) •§ 202.17 contain no proof of medical causation, i.e., evidence causally linking the plaintiffs alleged injuries to his or her exposure to lead, it is not an abuse of discretion for a trial court to determine that “defendants should not be put to the time, expense and effort of arranging for and conducting a medical examination of plaintiff without the benefit of [a] report[or reports] linking the symptoms or conditions of plaintiff to defendants’ alleged negligence” (Nero, 100 AD3d at 1384; see generally CPLR 3101 [a]; Finnegan, 90 AD3d at 1677; Neuman v Frank, 82 AD3d 1642, 1643 [2011]).
In contrast to the vast majority of personal injury actions, which involve discrete injuries sustained at a specific point in time, lead paint cases typically involve exposure over a sustained period of time and, unlike other toxic tort cases, there is no “signature injury” that is linked to lead exposure in the way that, for example, mesothelioma is linked to asbestos, emphysema is linked to cigarette smoke, or adenosis is linked to *1318 diethylstilbestrol, known as DES (Brenner v American Cyanamid Co., 263 AD2d 165, 173 [1999]; see Lindsay F. Wiley, Rethinking the New Public Health, 69 Wash & Lee L Rev 207, 242 [2012]; Kenneth R. Lepage, Lead-Based Paint Litigation and the Problem of Causation: Toward a Unified Theory of Market Share Liability, 37 BC L Rev 155, 158 [1995]). The injuries plaintiff alleges herein, such as hyperactivity, speech and language delays, irritability, memory deficits, and the increased probability of emotional and psychological impairments, “could have been caused by some source other than lead” (Brenner, 263 AD2d at 173) and, indeed, there is nothing in the disclosed medical records linking plaintiff’s alleged injuries to lead exposure.
The dissent further asserts that our ruling requires a plaintiff to retain an “expert” at an “early stage of litigation.” We disagree with that assertion. Contrary to the dissent’s characterization, the order at issue on appeal was issued near the close of discovery, after the parties had exchanged medical and educational records and conducted depositions of the relevant witnesses. Moreover, the trial court did not require plaintiff to retain an expert within the meaning of CPLR 3101 (d) to render an opinion on causation. Rather, the court ordered plaintiff to produce a “medical report or reports of any treating or examining medical service provider.” Pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.17 (b) (1), medical reports “may consist of completed medical provider, workers’ compensation, or insurance forms that provide the information required by this paragraph,” i.e., “a description of the injuries, a diagnosis and a prognosis.” Thus, the court simply required plaintiff to provide some documentation diagnosing plaintiff with the injuries alleged and linking those injuries to the exposure to lead before requiring defendants to proceed with a physical or mental examination.
As the Court of Appeals has noted, the purpose of CPLR 3121 (a) is to afford the examining party the “opportunity to present a competing assessment” of the other party’s physical or mental condition, which presumes that the examining party has received from the plaintiff medical reports concerning the plaintiffs claimed injuries and theory of causation (Kavanagh, 92 NY2d at 955 [emphasis added]). The trial court’s order is thus consistent with 22 NYCRR 202.17 and the CPLR’s general emphasis on broad disclosure, which facilitates more meaningful trial preparation “by requiring each party to ‘tip their hand’ well in advance of trial. This avoids surprise and tends to base the final result on the facts rather than on tactics” (Patrick M. Connors, Practice Commentaries, CPLR 3101:4 at 18).
*1319 We therefore conclude that, under the circumstances of this case, “it cannot be said that the trial court abused its discretion in finding that the need for the discovery outweighed the burden on the protesting party” (Kavanagh, 92 NY2d at 955), and thus there is no basis to “ ‘disturb the court’s control of the discovery process’ ” (Marable v Hughes, 38 AD3d 1344, 1345 [2007]).
All concur except Whalen, J., who dissents and votes to reverse the order insofar as appealed from in accordance with the following memorandum.